IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**ANNA M. MCKINNIE,**
        **Plaintiff,**

**v.**                                  **No: 5:06cv29/SPM/MD**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**
        **Defendant.**
_____

## REPORT AND RECOMMENDATION

      **This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant McKenzie's application for disability insurance benefits under Title II of the Act.**

      **Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

      **Plaintiff filed an application for disability benefits claiming an onset date of May 21, 2001.  The application was denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing**

was held on March 19, 2003 at which plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ rendered an unfavorable decision on July 21, 2004 (tr. 15-21) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had bilateral degenerative joint disease involving her knees, which was severe, but did not have an impairment or combination of impairments which met or was medically equivalent to any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that plaintiff's testimony regarding the severity of her impairments was not persuasive; that plaintiff retained the residual functional capacity for light work with a sit/stand option and involving no climbing, stooping, squatting or use of legs to operate machinery; that she was unable to perform her relevant past work; that she was a younger individual with a high school education; that based on her residual functional capacity as restricted above, there are a significant number of jobs in the national economy which plaintiff can perform, including night motel clerk, counter clerk and surveillance monitor; and that plaintiff was not disabled as defined in the Act.

## STANDARD OF REVIEW

The court must determine whether the ALJ's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.  *Ellis v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986).  "A determination that is supported by substantial evidence may be meaningless, however, if it is coupled with or derived from faulty legal principles." *Graham v. Bowen*, 790 F.2d 1572 (11th Cir. 1986) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  In determining whether substantial evidence exists, the court reviews the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983); *Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 590 (11th Cir. 2006) (Table, text in WESTLAW).  Substantial evidence, which is more than a scintilla, but less than a preponderance, is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Ellison*, 355 F.3d at 1275; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  If the Commissioner's decision is supported by substantial evidence, and based upon sound legal principles, it must be affirmed, "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

 Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995); *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986); *Brooks v. Barnhart*, 133 Fed.Appx. 669, 670 (11th Cir. 2005).  The Commissioner can do this through application of the Medical-Vocational Guidelines, also known as the "grids," or with the assistance of expert vocational testimony.  *Foote*, 67 F.3d at 1559.   If the Commissioner carries her burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Brooks, supra.*

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff was employed as a cafeteria worker in the Jackson County, Florida school system when on November 29, 2000, she fell directly on her knees.  From November 30, 2000 through March of 2001 plaintiff was treated at the Marianna Medical Center for her knee problems.  She complained of problems in her left knee only, and was treated conservatively.  By January 24, 2001 she no longer needed a knee immobilizer and walked well without difficulty.  She denied pain in her knee.

Up until that time her complaints had been limited to her left knee (tr. 165-170).  On February 22, 2001 plaintiff returned to the Marianna Medical Center, this time complaining of problems with her right knee over a period of the previous three weeks.  She was given an immobilizer and was told to stay off her knee to the extent possible (tr. 171).

On April 24, 2001 MRIs were performed on plaintiff's knees at the request of Karl Franz, M.D., plaintiff's primary care physician.  The left knee scan disclosed degenerative change of the medial meniscus indicating a possible cartilage tear with swelling in the joint and a baker's cyst (tr. 119-120).  The right knee scan disclosed tears in the medial and lateral menisci as well as a tear in the anterior cruciate ligament with joint swelling and early degenerative arthritis (tr. 121-122).  An orthopedic surgeon, Steven Surgnier, M.D., performed arthroscopic surgery on plaintiff's right knee on May 22, 2001.  The surgery consisted of debridement of the patellofemoral joint and medial and lateral compartments together with medial meniscectomy.  Plaintiff was discharged home after the surgery (tr. 117).

Dr. Surgnier followed the plaintiff's progress after her surgery and on July 27, 2001 noted that her right knee was still painful but that there was no gross swelling. Plaintiff was instructed to continue her physical therapy program and was told she needed to lose weight.  Dr. Surgnier also indicated that she could return to sedentary work (tr. 146).  Dr. Surgnier saw plaintiff two months later, on September 26, 2001,  and noted that her right knee continued to be painful and that she had limited ambulatory tolerance. Her knee was injected, and Dr. Surgnier indicated that she could perform sedentary work activities and that those restrictions were expected to be long term (tr. 144).  A few weeks later, Dr. Surgnier indicated there had been no improvement.  He stressed to plaintiff that she needed to lose weight. An x-ray of the right knee showed a marked decrease in medial compartment articular space and patellar hypertrophy (tr. 142-143).  On February 11, 2002 Dr.

Surgnier determined that plaintiff had reached maximum medical improvement with permanent impairment of 7% of the whole body.  Dr. Surgnier continued to follow the plaintiff and continued to urge her to lose weight (tr. 134-137) and on January 6, 2003 injected both knees for pain control (tr. 132).  Dr. Surgnier urged the plaintiff to lose weight, once again, on April 30, 2003.  That was the last time plaintiff saw him.  Dr. Surgnier's records indicate plaintiff's scheduled appointment for September 9, 2003 was canceled because workers compensation would no longer pay for treatment.

Plaintiff was seen by two consulting physicians.  The first, Chris E. Robinson, M.D., an orthopedic surgeon, examined the plaintiff on February 13, 2002, apparently at the request of her workers compensation carrier.  On physical examination he found that plaintiff was in no acute distress.  Her right knee was cool with no swelling.  She had three well healed arthroscopic portal sites.  Her flexion and contraction were essentially normal.  She had significant medial joint line tenderness but no instability.  X-rays showed advanced arthritis of the right knee with bone on bone deformity.  Dr. Robinson felt that plaintiff would benefit from physical therapy but that in the future she would require knee replacement surgery (tr. 87).

Much later, on September 24, 2003, plaintiff was examined by Mark Williams, M.D., an orthopedic surgeon, who described himself as a "Fellowship Trained Shoulder & Knee Specialist."  (Tr. 186).  This examination was also done at the request of plaintiff's workers compensation carrier.  Plaintiff gave Dr. Williams a history consistent with the foregoing narrative and stated that although she had pain in both knees, the pain in her right knee was greater than the left.  She complained of swelling, limping, popping, clicking and weakness, requiring the use of a cane.  Physical examination revealed a 5'2" woman who weighed 270 pounds.  She was in no acute distress.  She walked without any immobilization, using a cane in her right hand with a moderate limp.  Examination revealed right and left knees without

atrophy, scarring, or deformity, except the right knee had well healed arthroscopic portals. The knees were cool without swelling. Range of motion in the right knee was 30°-100° with pain at terminal flexion. Range of motion in the left knee was 10°-105° with similar pain at terminal flexion. There was no ligament instability in either knee but there was medial joint line tenderness in both knees. X-rays from Dr. Surgnier showed evidence of medial compartment degenerative arthritis with joint space narrowing. X-rays taken by Dr. Williams demonstrated evidence of bilateral knee degenerative joint disease, right greater than left, predominantly involving medial compartment in both knees. The right knee was significantly narrowed. Dr. Williams noted that he had reviewed plaintiff's complete medical record prepared for him by plaintiff's attorney. He also reviewed a deposition given by Dr. Surgnier and another by Dr. Robinson, presumably in the workers compensation case. Dr. Williams, who described himself as a board certified orthopedic surgeon with one year fellowship training and special interest in disorders of the shoulder and the knee, after having performed a comprehensive history and physical examination of the plaintiff, made the following finding:

> It is my opinion that within a reasonable degree of medical certainty that this patient did sustain an injury as a result of her fall on 11-29-00 that exacerbated a pre-existing degenerative arthritis condition involving both of her knees. It is clear from reviewing the medical records that this patient complained of the LEFT knee only initially and that her symptoms appeared to have resolved by her visit to medical provider dated 01-24-2001. It is also clear that any RIGHT knee symptoms had resolved by that time and she was not complaining of any symptoms regarding her RIGHT knee at that visit of 01-24-2001. Diagnostic studies in the form of radiographs obtained from Dr. Surgnier's office dated 11-05-2001 of RIGHT knee only demonstrates the degenerative changes that certainly pre-existed her accident of 11-29-2000. No records were available that were ordered from the Marianna Medical Center around the time of her accident. Nevertheless, I do feel that she does have significant degenerative arthritis and I agree with Dr. Robinson that her arthritis certainly predated her date of accident.

In terms of the diagnosis of her current knee conditions, these are clearly detailed above and I believe that she has bilateral knee degenerative joint disease, RIGHT greater than LEFT, causing her persistent problems with bilateral knee pain and stiffness. I believe that she has reached maximum medical improvement as a result of the industrial accident as of 01-24-2001 and that she was entitled to 0% permanent impairment rating for both of her knees as a result of the date of accident based on her asymptomatic status at that visit and her return to her pre-injury status which was certainly not normal because of her degenerative arthritis of both knees.  I believe that this opinion is within a reasonable degree of medical certainty and is based upon objective medical evidence.  I do not believe that any further treatment is warranted based upon the 11-29-2000 injury and this includes that any further Cortisone injections and/or consideration of any visco supplementation such as Hyalgan should be under the responsibility of workman's compensation care for date of accident 11-29-2000.

The patient, again, has reached maximum medical improvement as of 01-24-2001 with 0% permanent impairment rating for both knees and should have been able to return to her work full duty at that time.

(Tr. 189)

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to consider plaintiff's obesity as a factor in her claimed disability, in failing to give appropriate weight to plaintiff's treating physician, in improperly discounting plaintiff's subjective complaints of pain, and in failing to make a finding in the frequency of the sit/stand option needed by plaintiff, and that plaintiff was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.    <u>Obesity.</u>

Plaintiff first contends that the ALJ did not consider the fact of her obesity, either as a factor in determining her residual functional capacity, or as a severe condition.  She argues that Social Security Ruling (SSR) 02-1p mandates that the ALJ make specific findings concerning the existence and effects of plaintiff's obesity.

Prior to 1999 the Social Security Regulations had a separate impairment listing for obesity, Listing 9.09.  That listing was deleted in 1999 by publication in the Federal Register of new listings which did not contain a specific listing for obesity. 64 FR 461222 (1999).   Rather than have a specific listing for obesity, the Commissioner opted for inclusion of obesity in consideration of specific other listed impairments, including musculoskeletal, respiratory and cardiovascular problems. Relative to the issue raised here, the revised regulation contains language in the introductory section on impairments of the musculoskeletal system:

> *Effects of obesity*: Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity.   The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.   Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

Pt. 404, Subpt. P, App. 1, § 1.00Q.  The Commissioner also published a Policy Interpretation Ruling, SSR 02-1P, in September 2002, which provided guidance to adjudicators concerning the evaluation of obesity in disability claims.  The Ruling explains that an obese person may meet a listing if his or her underlying impairment is sufficient to meet the listing by itself, without obesity being considered.  SSR 02-

1P, ¶ 7. Moreover, an obese person whose underlying impairment is insufficient to meet a listing may nonetheless be found disabled if the underlying impairment *in combination with* obesity meets the listing, because the obesity increases the severity of the impairment. *Id*. The Ruling makes no assumptions, however. It provides that each case will be considered on its merits based on the administrative record. *Id*.

Here petitioner contends that the ALJ erred in not finding that obesity was a severe condition, and in not considering it in combination with plaintiff's knee problems. Contrary to plaintiff's argument, the ALJ was not required to find that plaintiff's obesity was "severe." SSR-02-1P specifically states that there is no prescribed weight or body mass index that equates with severe, but that an individualized assessment on functioning is all that is required. SSR 02-1P, p. 5. It is true that the ALJ did not mention "obesity" in his decision, but that is not critical. First, the ALJ reviewed the medical documentation in the record, and noted that plaintiff weighed more than 200 pounds (tr. 18). However, he also considered the opinions of the treating physicians. As noted above, neither of plaintiff's treating physicians, nor either of the examining physicians, opined that plaintiff was so restricted in her physical abilities as to be incapable of work, and all physicians were well aware of her obesity. One of her treating physicians, Dr. Surgnier, consistently considered her able to do sedentary work while at the same time urging her to lose weight, and one of the examining physicians, Dr. Williams, found no restrictions at all. Since Dr. Surgnier continually admonished plaintiff to lose weight, he obviously was aware of her obesity, and just as obviously took that into account. It was therefore not necessary for the ALJ to in effect add a consideration of obesity on top of Dr. Surgnier's opinion. The same is true of Dr. Williams' opinion.

Petitioner cites three cases in support of her claim: *Shellhouse v. Barnhart*, 395 F.Supp.2d 1136 (N.D. Ala. 2005); *Thomason v. Barnhart*, 344 F.Supp.2d 1326

(N.D. Ala. 2004); and *Brown v. Barnhart*, 325 F.Supp.2d 1265 (N.D. Ala. 2004).  None of those cases is persuasive here, however, because in each case there was a medical opinion that the claimant was restricted to the extent that he or she could not work.  That is not the case here.  Thus, while it may have made for a more complete record for the ALJ to have mentioned plaintiff's obesity, his failure to do so does not require reversal.  Clearly an orthopedic surgeon who treats or examines a person for knee problems, and knows she is overweight, takes the weight issue into consideration in determining her limitations.  Plaintiff has failed to show error, and is not entitled to relief on this ground.

>        2.     Opinion of treating physician.

Plaintiff next asserts that the ALJ failed to state what weight he assigned to her treating physicians' opinions.  In reality, only Dr. Surgnier gave an opinion related to working ability, and he opined that plaintiff could do sedentary work.  If Dr. Surgnier had given plaintiff restrictions that precluded *any* work, the ALJ's failure to specify the weight he assigned to that opinion would make a difference.  Here, however, Dr. Surgnier gave no such opinion.  Thus, while the ALJ found that plaintiff could work at the light level, his ultimate finding was that she was not disabled, and that finding was perfectly consistent with Dr. Surgnier's opinion that plaintiff could do sedentary work.  Thus, even if the ALJ had assigned controlling weight to Dr. Surgnier's opinion, the result would be the same.  There was no error in not placing a specific value assignment on Dr. Surgnier's opinion.

>        3.     Plaintiff's subjective complaints of pain.

Plaintiff next contends that the ALJ erred in rejecting her subjective complaints of pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could

be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992));

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).   However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain she must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.   Where she fails to do so, the Eleventh Circuit has stated that it would thus hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054.  Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.   Those complaints are, after all, subjective.   "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms

and complaints").[2]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Plaintiff testified that her pain was disabling.  The ALJ found this not to be credible.  Plaintiff's treating physicians were well aware of her claims of pain, but they did not consider plaintiff's overall condition to be disabling.  Also, the ALJ noted that in January of 2003, plaintiff indicated on a questionnaire that she took a single 81 mg. tablet of aspirin per day, which was not helpful in relieving her pain, but at the time of the hearing she testified that she continued to take the same dosage and it did help relieve her pain (tr. 19).  Plaintiff took no prescription painkillers. The ALJ also noted that plaintiff's claimed limitations regarding her daily activities were not consistent with the medical record or with the statemetns she made on the January 2003 questionnaire (tr. 19).  Plaintiff had no problem taking care of her personal needs, and she "did not testify to any situation, condition, or

---

[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

position that worsened her pain." (Tr. 19). The ALJ's finding regarding plaintiff's credibility was supported by the record.

    4.   <u>Sit/Stand option.</u>

    Finally, plaintiff argues that the ALJ did not quantify the "sit/stand" option he presented to the vocational expert as part of his hypothetical question. Plaintiff says that there should have been some time limits contained in the question, such as how long a person could sit or stand continuously. There is no authority for this contention. Plaintiff points to SSR 96-9p, which requires the assessment to be specific as to the time spent sitting or standing, but this guideline involves cases where the claimant is limited to *less than sedentary* work. Here, plaintiff was found do be able to do light work, with some limitations, including the option to sit or stand. The question was put to the vocational expert in that way, and the vocational expert testified that jobs such as night motel clerk, counter clerk, and surveillance monitor met those criteria. Those jobs are not the type of assembly line jobs generally contemplated by SSR 96-9p. The vocational expert understood the hypothetical question, and indicated that the jobs he described would allow the worker to sit or stand as desired "most of the time," or, in the case of a motel night clerk, would have to stand only when there was a customer at the counter, unlike a cashier (tr. 351). Thus, the ALJ's presentation of the hypothetical was supported by the record, and plaintiff is not entitled to reversal on this ground.

    Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

    At Pensacola, Florida this 22nd day of January, 2007.

                /s/ *Miles Davis*

                MILES DAVIS
                UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**